# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**REBECCA G. POE**  **Plaintiff**

**v.**  **Civil Action No. 4:05CV266-GHD-EMB**

**THE COMMISSIONER OF**
**SOCIAL SECURITY**  **Defendant**

## MEMORANDUM OPINION

Plaintiff, Rebecca G. Poe, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her applications for disability benefits under Title II and Supplemental Security Income ("SSI") under Title XVI. Having duly considered the briefs of the parties, the administrative record and the applicable law, the Court rules as follows.

## Administrative Proceedings

Plaintiff filed applications for disability benefits under Title II and SSI benefits under Title XVI on October 9, 2001, alleging a disability onset date of June 12, 1995 (Tr. 60-62, 269-72). The applications were denied initially and on reconsideration (Tr. 30-41, 273-79). In a hearing decision dated July 14, 2005, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Act (Tr. 13-25). Plaintiff filed a request for review of that decision, which the Appeals Council declined on October 4, 2005 (Tr. 5-7). The ALJ's hearing decision is now ripe for review under section 205(g) of the Act, 42 U.S.C. § 405(g).

## Facts

Plaintiff was born March 16, 1948 (Tr. 60) and was 56 years of age at the time of the hearing decision on July 14, 2005 (Tr. 25). She completed a GED (Tr. 102). Plaintiff has

previous work experience doing bookkeeping for a retail furniture store (Tr. 297-98). Plaintiff alleged that she could not work due to back pain, high blood pressure, headaches, numbness in the right leg, neck and shoulder pain and a mental impairment (Tr. 96, 110).

The ALJ found that Plaintiff performed substantial gainful activity for the years between 1995 and 2003 (inclusive) (Tr. 24). After additional review and evaluation of the medical evidence of record, the subjective testimony at the hearing from Plaintiff and her husband (Tr. 288-328), and the testimony of a vocational expert ("VE") (Tr. 328-35), the ALJ further found Plaintiff not disabled through the date of his decision (Tr. 13-25). Contrary to Plaintiff's allegation of disability, the ALJ found that she had the residual functional capacity ("RFC") to perform a range of light work that did not require lifting or carrying more than ten pounds frequently and twenty pounds occasionally (Tr. 22). Additionally, he found that Plaintiff could individually climb, balance, stoop, kneel, crouch, and crawl no more than two and one-half hours per eight-hour work day (Tr. 24, Finding No. 6). Based upon this RFC and VE testimony, the ALJ found that Plaintiff could return to her past relevant work, which was closely approximated in the following jobs: an office manager (DOT# 219.362-010), which was semi-skilled work at the light exertional level; bookkeeper (DOT# 210.382-014), which was skilled at the sedentary level; telephone solicitor (DOT# 299.357-014) which was semi-skilled work at the sedentary exertional level; and general merchandise sales person (DOT# 279.357- 054) which was semi-skilled work at the light exertional level (Tr. 24). Given these findings, the ALJ concluded that Plaintiff was not disabled.

### Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal

2

standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

## **Law**

To be considered disabled and eligible for benefits, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1]  *Id.*  §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

(5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id*. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id*.; *accord Selders*, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is

---

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## Analysis

Plaintiff identifies two issues for this appeal: 1) the ALJ erred in finding Plaintiff engaged in substantial gainful work activity from her alleged onset date, June 12, 1995, until January 1, 2004, and was, therefore, not disabled during this period; and 2) the ALJ erred in finding Plaintiff's mental impairment was non-severe.

### *Whether Plaintiff Engaged in a Period of Substantial Gainful Work Activity*

In this case, the ALJ found Plaintiff had performed substantial gainful activity from her alleged onset date of June 12, 1995, through December 31, 2003. Such a finding is a bar to eligibility to disability benefits for that period under Title II and SSI under Title XVI. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Plaintiff argues the ALJ erred in this regard. Instead, Plaintiff characterizes her income for this time period as "unearned income" which "should not be counted in order to disqualify her from benefits." Pl.'s Br. 26.

The burden of showing that Plaintiff's income was not from substantial gainful activity is upon Plaintiff. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Under SSA regulations, a claimant who has engaged in "substantial gainful activity" is not disabled, despite medical evidence to the contrary. 20 C.F.R. §§ 404.1520(a), (b); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986). Substantial gainful activity is any activity, including part-time work, that involves significant physical or mental activities and is the kind of work usually done for profit. 20 C.F.R. §§ 404.1572(a), (b). Indeed, average monthly earnings as meager as $500 to $700 are

presumed to be evidence of substantial gainful activity. 20 C.F.R. § 404.1574(b). This presumption may be rebutted however, if the Commissioner finds that the claimant's work attempt was unsuccessful, that she worked under special conditions or that her earnings were subsidized. 20 C.F.R. §§ 404.1573 and 404.1574. As such the claimant may introduce evidence sufficient to rebut the presumption despite earnings in excess of the regulatory limit. *See White v. Heckler*, 740 F.2d 390 (5th Cir. 1984); *see also Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973).

In deciding that Plaintiff had engaged in substantial gainful activity, the ALJ first determined Plaintiff's monthly income was greater than the levels set forth by the SSA to demonstrate that a claimant is working. *See* § 404.1574(b)(2). The ALJ noted that earnings of more than $500 per month in years 1990 through June of 1999; more than $700 per month from June 1999 [sic] through December of 2000; more than $740 per month in 2001; more than $780 per month in 2002; and more than $800 in 2003 would ordinarily show that Plaintiff had engaged in substantial work activity (Tr. 14). Plaintiff received $22,500 per year in 1995, 1996, and 1997; $20,000 in 1998; $25,000 in 1999, $17,500 in 2000; and $20,000 in 2001, 2002 and 2003 (Tr. 15, 74-95). Because these earnings exceeded those noted by the ALJ, a presumption was created that Plaintiff had engaged in substantial gainful activity and was not disabled for the period from June 12, 1995 through December 31, 2003 (Tr. 15).

The ALJ rejected Plaintiff's allegations that she had received subsidies and worked under special conditions. On an October 2001 Disability Report, Plaintiff reported that she couldn't sit at her desk any period of time and could work no more than two to three hours at a time (Tr. 96). She also reported that any work she did consisted of "made work" which involved "minimal or insignificant duties" which made "little or no demand" on her (Tr. 97). However, beyond her

6

testimony that she merely received "dividends" from the furniture business (Tr. 299), Plaintiff presented no documentation or other evidence supporting her claim that she received subsidies.

Furthermore, the ALJ found the medical evidence failed to support Plaintiff's claim that she had worked in a sheltered environment in the sense that she needed special help to do the work she was performing prior to January 1995. Plaintiff testified that prior to 1995 she mainly sat at her desk and did "paperwork" or bookkeeping due to back problems (Tr. 291-94, 297-98). She also said this work required that she be able to concentrate (Tr. 298).

On June 2, 1997, Plaintiff was examined at the Mississippi Spine Clinic, where she was found to have degenerative disc disease at L2-3 and L5-S1, possible lumbar stenosis at L2-3 and chronic low back pain (Tr. 143). Later, on November 10, 1997, she was treated by Allen Hale Thompson, M.D., who indicated that her hypertension was controlled by medication (Tr. 136). At that time, Plaintiff had recently lost 30 pounds and had no complaints (Tr. 136). Dr. Thompson noted that another physician had indicated that Plaintiff had degenerative disc disease at L2-3 and L5-S1 with possible lumbar stenosis and questionable nerve damage in the right thigh (Tr. 136, 140). He noted that Plaintiff's pain medication had produced good results and concluded that Plaintiff seemed "to be doing very well" (Tr. 136).

On March 31, 2000, Plaintiff returned to the Mississippi Spine Clinic, where an examination revealed lumbar discogenic syndrome and mild obesity (Tr. 142). X-rays showed marked degenerative changes at L2-3, significant spondylosis at 3-4 with some listhesis and degenerative changes with a vacuum disc sign at L5-S1 (Tr. 142). Notwithstanding, Plaintiff reported that she was managing to work but had trouble traveling or doing anything else for extended periods of time (Tr. 142).

Beginning on November 20, 2000, Plaintiff was treated by Michael E. Steuer, M.D., at

7

the Delta Pain Treatment Center and continued such treatment until May 29, 2001 (Tr. 154-63). On May 29, 2001, Dr. Steuer noted that Plaintiff had lumbar degenerative disk disease, lumbar radiculitis, myofascial syndrome, lumbar facet disease, low back pain, cervicogenic headaches, cervical radiculitis and anxiety disorder (Tr. 154). Notwithstanding, Dr. Steuer noted that Plaintiff reported significant improvement in pain symptoms and that her activities of daily living were only mildly difficult to perform (Tr. 154).

On March 28, 2002, Nelson Garrett, M.D., completed a Disability Report Form which indicated that Plaintiff's body systems (including her musculoskeletal, neurological and psychiatric systems) were normal (Tr. 207). Dr. Garrett noted that Plaintiff's prognosis for anxiety was fair, but that her prognoses for anemia and hyperlipidemia, *inter alia*, were good (Tr. 207).

On April 11, 2002, Plaintiff underwent a pain management consultation with Jeffrey T. Summers M.D., who noted that Plaintiff had an antalgic gait but was able to heel and toe walk (Tr. 213). He also noted that Plaintiff seemed neurologically intact without focal motor group weakness or dermatomal sensory loss, even though Plaintiff was without lower extremity reflexes (Tr. 213). Straight leg raise testing was negative (Tr. 213). Plaintiff was markedly deconditioned and could flex in the lumbar pine only 30 degrees and extend 10 degrees before complaining of pain (Tr. 213). Examination of extremities was normal (Tr. 213). Possible thoracic and lumbar radicular processes were noted (Tr. 214). Diffuse spinal pain was also noted (Tr. 214). It was noted that Plaintiff's MRI showed a T9/10 left lateral disc protrusion and bone spur (Tr. 214). Her treatment plan included trial of a thoracic epidural steroid injection and evaluation for therapy.

Plaintiff was examined by Gilbert S. MacVaugh, Jr., Ph.D., on September 15, 2002 (Tr.

8

238-42). Plaintiff reported that she was last gainfully employed trying "to do payroll at the furniture store" (Tr. 238). She then stated that she had been doing so for 15 years and that she did not work full-time (Tr. 238). According to Dr. MacVaugh, Plaintiff reported living with her husband who, Dr. MacVaugh stated, "operates a furniture store in which the patient works" (Tr. 239). Additionally, Dr. MacVaugh noted that Plaintiff "receives a check for her work on a monthly basis at the store" (Tr. 239). Dr. MacVaugh noted that Plaintiff had adequate communication and social skills to interact with others to meet basic age appropriate needs, with the exception of physical limitations (Tr. 239). She had no trouble making phone calls or looking numbers up in a directory or managing money (Tr. 240). Dr. MacVaugh noted that Plaintiff did not appear to have any significant self-imposed limitations (Tr. 240). After clinical examination, Dr. MacVaugh reported the following diagnoses: major depressive disorder (single episode without psychotic features), panic disorder with possible agoraphobia, average intelligence (estimate only), and multiple physical problems by report (Tr. 241). In a summary portion of his report, Dr. MacVaugh stated that Plaintiff was working part-time in her husband's business (Tr. 241). He added that Plaintiff had the innate mental ability to perform routine, repetitive type tasks, accept supervision and maintain concentration and attention but with some limitations (Tr. 241). He further added that Plaintiff could manage her own funds (Tr. 241). He suggested further treatment for Plaintiff's anxiety and depression (Tr. 241).

Dr. Ruth K. Fredericks treated Plaintiff from to August 3, 2001, to October 26, 2002 (Tr. 249-65). On January 20, 2003, Dr. Fredericks completed a Disability Report Form in which she indicated that Plaintiff's body systems were normal, except for her neurological system (Tr. 249). Dr. Fredericks diagnosed Plaintiff with chronic back pain and stated that she had last treated Plaintiff in October 2002 (Tr. 249).

9

Though the medical evidence documents Plaintiff's back problem and depression, there is sufficient evidence indicating that during the period in question she was able to and continued to perform the work she was doing prior to 1995, albeit on a part-time basis. Furthermore, medical evidence shows that as late as 2002, she was able to maintain concentration which she deemed to be crucial for the job she was performing. Therefore, the Court finds substantial evidence supports the ALJ's determination that Plaintiff failed to present evidence sufficient to rebut the presumption that she performed substantial gainful work activity from June 12, 1995, until December 31, 2003, and was thus not disabled during this period.

***Whether Plaintiff's Mental Impairment Was Severe***

Plaintiff next suggests the ALJ erred in concluding that she did not have a severe mental impairment. Pl.'s Br. 4,17. As pointed out by the Commissioner in a footnote, it is clear the ALJ failed to apply the correct legal standard in assessing the severity of Plaintiff's mental impairment at step two of the sequential analysis. Def.'s Br. n. 5.

The standard for severity used by the ALJ in this case is based on the regulation stating that an impairment is not severe if it does not "significantly limit [the claimant's] physical or mental ability to do basic work activities" (Tr. 20). *See* 20 C.F.R. § 404.1520(c). To ensure application of the proper standard, the Fifth Circuit has construed the current regulation as setting the following standard for non-severity:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984). Accordingly, the Appeals Court has made clear the burden which lies on the Secretary:

> [W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration.

*Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir.1985).

The ALJ in this case relied solely on the language of the current regulation. Under *Estran* and *Stone*, the case must, therefore, be remanded for reconsideration of the facts and any further evidence under the *slight abnormality* standard in determining whether Plaintiff was able to work after January 1, 2004.

A judgment consistent with this opinion will be entered this day.

**THIS**, the 29th day of March, 2007.

/s/ Glen H. Davidson
CHIEF JUDGE